FILED
U.S. DISTRICT COURT
INDIANAPOLIS DIVISION

2015 JUN -9 PM 1: 35

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

1
2 Paul Loebe
3 P.O Box 744
4 Anderson, IN 46015
5
6
7                    **UNITED STATES DISTRICT COURT**
8
9            **FOR THE SOUTHERN DISTRICT OF INDIANA**

PAUL LOEBE II,

            Plaintiff,       **1:15**-cv-**0903** TWP -MJD

v.

                                    **COMPLAINT**

BRIAN G. KOLFAGE, SR.; SCOTT
KUHNEN; LOGAN ELIA; BRIAN G.
KOLFAGE, JR. also known as SENIOR
AIRMAN BRIAN KOLFAGE, ASHLEY
KOLFAGE,

           Defendants.

10

11       Plaintiff Paul Loebe, representing himself *pro se*, and for his Complaint against

12 defendants Brian G. Kolfage, Sr., Brian G. Kolfage, Jr., Scott Kuhnen, Logan Elia, Ashley

13 Kolfage (collectively, "Defendants") alleges as follows:

14                   **PARTIES AND JURISDICTION**

15 **1.**      Plaintiff Paul Loebe II ("Loebe") is a resident of Indiana,

16 **2.**      Defendant Brian G. Kolfage, Sr. ("Kolfage Sr.") is a resident of Michigan and is the

17         father of defendant Brian G. Kolfage, Jr.

18 **3.**      Defendant Brian G. Kolfage, Jr. ("Kolfage Jr.") is a resident of Florida and is the so

19         of Kolfage Sr.

20 **4.**      Defendant Kolfage Jr. is also known by the names Senior Airman Brian Kolfage an

21         Airman Kolfage.

22 **5.**      Defendant Ashley Kolfage ("A. Kolfage") is a resident of Florida and is married to

2
2

1    Kolfage Jr.

2  **6.**    Defendant Logan Elia ("Elia") is a resident of Arizona and is an attorney of record

3    for Kolfage Jr. and A. Kolfage.

4  **7.**    Defendant Scott Kuhnen ("Kuhnen") is a resident of North Carolina.

5        **GENERAL ALLEGATIONS REGARDING LOEBE**

6  **8.**    Loebe is a Military Veteran with nine years of military service. He originally enlisted

7    in the U.S. Marine Corps (USMC) in 2005. Loebe transferred to the USMC Reserve

8    effective 2013.

9  **9.**    He was promoted to the rank of Staff Sergeant in the USMC. This rank is superior t

10    the highest rank attained by Kolfage and is awarded based on meritorious service ar

11    not simply "Time-In-Grade/Time-In-Service" as was the highest rank attained by

12    Kolfage.

13  **10.**    During his eight years of active duty as an artilleryman, Loebe spent his entire tenur

14    in "victor" units - direct combat. He did four combat deployments - two in Iraq, one

15    in Afghanistan, and one expeditionary deployment to the Middle East.

16  **11.**    Loebe enlisted in October 2005 at the height of the Iraq War. He exited active duty

17    in November 2013 as a Sergeant (E-5). His highest position with the greatest

18    responsibility was as a local security chief/platoon sergeant. Loebe is currently in th

19    Marine Reserves as a Staff Sergeant (E6) now as an 0532 (Civil Affairs). He was

20    formerly an 0811 (Artilleryman). He has an impeccable service record consistently

21    outranking 90% of his peers throughout his time in service. Loebe has received one

22    "meritorious" promotion ahead of normal tenure expectations, and promoted to Staf

23    Sergeant ahead of his peers. He has never once received adverse paperwork of any

24    kind.

25  **12.**    For his final two years on active duty Loebe was designated as the number one

26    artillery Sergeant - which put him on the fast track towards his Staff Sergeant (SSgt

1    promotion. Loebe has a widespread reputation within the USMC that attests to his

2    record of fighting bullies in the Marine Corps by being a whistleblower. Loebe

3    submitted around 10 "Request Masts" personally and drafted around 25 for Marines

4    that were being abused. A Request Mast is the formal process designated by the

5    USMC for the purpose of registering grievances with commanding officers.

6  **13.**    Loebe has been wounded in combat from mortar fire and Improvised Explosive

7    Devices (IEDs), but was not permanently maimed due in large part to his continuou

8    adherence to the training and standards of military discipline as described above.

9  **14.**    Loebe first became involved in activism in 2011, fighting for religious equality in tl

10    armed forces. He worked with American Atheists in May 2011. Loebe became the

11    Military Director of American Atheists in May 2013. He transitioned from America

12    Atheists to the Military Religious Freedom Foundation (MRFF) in November 2013

13    until April 2015. The MRFF has been nominated for seven Nobel Peace Prizes.

14    Loebe went to MRFF out of a desire to expand defending the religious rights of

15    everyone in the military - not just atheists.

16  **15.**    Loebe was enrolled in Roosevelt University for a degree in Political Science.

17    Roosevelt University specializes in Social Justice - that is their mission statement.

18    He intends to continue working on a degree in Constitutional Law once he complete

19    his undergraduate studies.

20  **16.**    Loebe has had a lifelong interest in political history in the United States. He

21    describes himself as an "Eisenhower Conservative". Loebe has been an ardent

22    activist standing for religious freedom for all military service members regardless o

23    their personal faith.

24  **17.**    Loebe is currently a writer and journalist who currently writes for "Patheos", "If Yo

25    Only News", and "Liberal America". He has been writing online since 2012. On his

26    Patheos blog he writes under "Rock Beyond Belief" which mainly covers issues of

1    religion and military atheism. While Loebe writes for "If You Only News" and

2    "Liberal America" his articles consist mainly of political commentary which cover

3    discussions including but not limited to religion, racism, discrimination, bullying,

4    bigotry, and intolerance.

5  **18.**   Loebe owns and operates the Facebook page for Rock Beyond Belief (see

6    https://www.facebook.com/RockBeyondBelief), along with other administrators,

7    which focuses on such topics previously mentioned, as well as other similar topics,

8    since late 2012. The Facebook page as well as the blog date back further as Loebe is

9    not the founder but later was given the blog and page in its entirety when the founde

10   retired from public life and writing.

11  **19.**   Loebe does not maintain or administrate any of the other Facebook pages for the

12   websites with whom he writes for.

13  **20.**   Loebe, a father of a one-year old girl, takes his family's security seriously, and

14   particularly dislikes the practice of "doxing" (the revelation of one's personal

15   information including but not limited to personal addresses, phone numbers,

16   private email addresses, and family contact information) as a means of resolving

17   political differences.

18  **21.**   As a writer and journalist, Loebe believes strongly in the protections afforded by

19   the First Amendment, including Freedom of the Press.

20  **22.**   Loebe's ability to successfully continue to pursue a career in his chosen

21   profession is dependent upon his reputation for honesty and good moral

22   character. He markets not only his talent and experience, but his personal ethic

23   and principles as well.

24  **23.**   Loebe conducts himself with honor, dignity, and integrity.

25  **24.**   Loebe works hard to maintain this reputation, specifically including his

26   reputation online.

1          **GENERAL ALLEGATIONS REGARDING DEFENDANTS**

2    **25.**    Plaintiff incorporates the previous allegations as though set forth completely herein

3    **26.**    Under information and belief, the list of administrators for Kolfage Jr.'s autonomou

4          Facebook page (see https://www.facebook.com/BrianKolfage ) includes Kolfage Sr

5          who also has his own autonomous Facebook page.

6    **27.**    "Stolen Valor" is an illegal act regarding the lying about, exaggerating or otherwise

7          misrepresenting military service, awards, decorations and/or rank. It is an all-too-

8          common occurrence among non-veterans and military veterans alike which many

9          veterans take as a personal insult to their own military service. The Supreme Court

10         has determined that claiming "stolen valor" is protected as free speech unless used t

11         receive tangible benefit such as (but not limited to) free meals, free tickets, or actua

12         money.

13   **28.**    There is a group of military veterans who have banded together to detect, investigat

14         and expose perpetrators of "stolen valor". This group operates the Facebook

15         community page, "Stolen Valor" (see https://www.facebook.com/StolenValor ).

16         There is an associated webpage called "This Ain't Hell" (see

17         http://thisainthell.us/blog/ ) which assists in investigating and facilitates discussion

18         among veterans and interested members of the public regarding possible cases of

19         "stolen valor". A cursory review of either site demonstrates that "stolen valor" is ju:

20         as likely to be committed by actual military veterans (including "disabled veterans"

21         as by non-veterans.

22   **29.**    It is through an entry on the "This Ain't Hell" website that postings made to Kolfag

23         Jr's autonomous Facebook page, which Kolfage Sr. also manages, which encourage

24         active duty service members to disobey orders and commit mutiny, are highlighted.

25         This entry also contains discussion by several veterans of what they view as

26         unacceptable conduct by Kolfage Jr. (see http://thisainthell.us/blog/?p=37377 ).

1   **30.**   Under information and belief, contrary to public characterizations by the defendants
2        Kolfage Jr's military service was unremarkable and undistinguished. He was never
3        promoted based on merit but only on the basis of "Time-in-Grade/Time-in-Service"
4        as is normal for low-ranking enlisted personnel.

5   **31.**   Under information and belief, by Kolfage Jr.'s own admission, he was only wounded
6        in the first place because he harassed and intimidated a fellow airman in order to take
7        his place at Balad Air Base.

8   **32.**   Under information and belief, there is no evidence publicly available to support
9        Kolfage Jr.'s claim that he is "the most seriously injured airman in United States
10       history who survived." This is a claim that Kolfage Sr. has repeatedly promoted as
11       some sort of fact that has been verified by the U.S. military. There is no credible
12       methodology or mechanism existing to verify such absurd, unquantifiable and
13       subjective claim. In fact, while Kolfage Jr. is in fact a "triple amputee", Mr. Clarence
14       "Red" Mosley was an airman who served in the US Air Force during the Korean
15       War and was so severely wounded that he lost both hands and legs, becoming a
16       quadruple amputee. Mr. Mosley was obviously more severely wounded than Kolfage
17       Jr. and he survived his wounds to live a full life until his death in 2011.

18   **33.**   Under information and belief, Kolfage Jr. has impersonated superior rank on at least
19       one occasion.

20   **34.**   Under information and belief, contrary to the rules of military law, known as the
21       Uniform Code of Military Justice (UCMJ), Kolfage Sr. and Kolfage Jr. also refused
22       to place an indicator of Kolfage Jr's retired status with his rank on his autonomous
23       Facebook page.

24   **35.**   Under information and belief, contrary to the UCMJ, Kolfage Sr. and Kolfage Jr.
25       also refused to remove Kolfage Jr's picture, portraying him in full service dress
26       uniform, from his autonomous Facebook page which is rife with extreme and

1    incendiary political statements.

2  **36.**  Under information and belief, contrary to the UCMJ, Kolfage Sr. and Kolfage Jr.

3    also refused to remove Kolfage Jr's picture, portraying him in full service dress

4    uniform, from his autonomous Twitter account.

5  **37.**  Under information and belief, as part of his political activities, Kolfage Jr. has on

6    more than one occasion publicly encouraged active duty service members to commi

7    mutiny and disobey lawful orders. This, by the very definition of the word, is

8    sedition. It has also been noticed by members of the public at large that Kolfage Jr.

9    has portrayed the nature of his military service in a seemingly deceptive light.

10  **38.**  Under information and belief, Kolfage Jr. has lied about the nature of his military

11    service, making claims that he was trained as a pilot but served as an "Army

12    policeman".

13  **39.**  According to Kolfage Jr. and Ashley Kolfage's own public statements, Kolfage Jr.

14    initiated a sexual relationship with Ashley Kolfage on their first date in early 2008.

15    Kolfage Jr.'s first wife, Paige Kolfage, formerly a resident of AZ, petitioned for

16    divorce in December, 2009. From these facts, Kolfage Jr. was engaged in an

17    extramarital affair for almost 36 months prior to being divorced from his first wife,

18    Paige, in 2011.

19  **40.**  As a recipient of a military pension, the medically retired Kolfage Jr. is still subject

20    to the jurisdiction of the UCMJ. Adultery is a violation of the UCMJ.

21  **41.**  Under information and belief, even as recently as June 7, 2015, Kolfage Jr. has

22    passed the creative work of another person as his own creation in a blatant act of

23    plagiarism.

24  **42.**  Under information and belief, Kolfage Jr. operates under a definition of integrity

25    differing from the generally accepted convention. By his own admission, the

26    Department of Veteran's Affairs (VA) has determined that Kolfage Jr. illegitimately

1    received over $4800 in benefits to which he was not entitled. He has further alleged

2    that the VA admitted to him that this was due to a clerical error. Kolfage Jr. has not

3    made any such admission by the VA publicly available and the VA is forbidden by

4    law or regulation from commenting outside a court of law on such matters.

5    Subsequent to the earlier admissions by Kolfage Jr., he has most recently claimed

6    that the VA has increased that determination of unentitled benefits to $7000. This is

7    hardly the result one would expect from correcting a "clerical error".

8    **43.**    Under information and belief, defendants operate an alleged charity as an apparently

9    unregistered business enterprise consisting solely of Kolfage Jr. and Ashley Kolfage.

10   The enterprise has not applied for 501(c)(3) status and as there appears to be no

11   organization behind it, the enterprise does not appear to qualify for such status.

12   Defendants have refused to make a public accounting of expenditures and donations

13   of the enterprise, contrary to normal practice for legitimate charities while also

14   disqualifying it for 501(c)(3) status.

15   **44.**    Under information and belief, the name of defendants' alleged charity is "Wounded

16   Warrior Mentoring Engagements". This name is very similar, as to be almost

17   identical, to a legitimate registered charity named "Wounded Warrior Mentoring

18   Project". To the untrained eye, there is a great potential for "brand confusion". Such

19   brand confusion could possibly lead to fewer donations to the legitimate, more

20   established, older "Wounded Warrior Mentoring Project".

21   **45.**    Under information and belief, Kolfage Jr. has alleged that he started the business

22   enterprise as a solo venture, instead of joining with other more established charities

23   due to decreased funding from the VA for such ventures. This allegation by the

24   defendant is uncorroborated by other entities of similarly stated purpose as the

25   defendant's business venture, such as the Wounded Warrior Mentoring Project.

26   **46.**    Under information and belief, the activities conducted by the Kolfage Jr. as part of

1    his business venture appear to be primarily public speaking, "whirlwind tours" of

2    overseas locations and other such public appearances. Mentoring traditionally

3    involves long-term one-on-one relationships. With defendant's schedule of classes,

4    homework, and public appearances there does not appear to be any mentoring havir

5    occurred. As "Mentoring" is included in the name of the enterprise, this could be

6    construed as a deceptive trade practice.

7  **47.**  Under information and belief, in addition to the autonomous Facebook page listed

8    above, Kolfage Jr. is also administrator of the currently defunct "Team Kolfage

9    Against Bullying" Facebook page (TKAB). Through the TKAB attack page,

10    numerous posts intended to harass and intimidate various individuals who Kolfage

11    Jr. disagree with were made (see https://www.facebook.com/pages/Team-Kolfage-

12    Against-Bullying/ ).

13  **48.**  Under information and belief, Kolfage Jr.'s attitude toward people of different

14    religious beliefs, other than his own, is one of contempt and derision.

15  **49.**  Under information and belief, Kolfage Jr. has used his Twitter account to harass,

16    intimidate and/or defame individuals he disagrees with. This includes the whole-

17    cloth fabrication of fake posts which he attributes to such individuals.

18  **50.**  Under information and belief, Kolfage Jr.'s autonomously named Facebook page ar

19    Twitter account have both been suspended at least once for violations of providers'

20    standards of proper conduct.

21  **51.**  Under information and belief, both Brian Kolfage, Sr., and Brian Kolfage, Jr., have

22    confirmed themselves to be administrators of the plaintiff's autonomous Facebook

23    page.

24  **52.**  Under information and belief, plaintiff's father, Kolfage Sr., also harassed and

25    defamed Loebe, through various incendiary posts to the currently unpublished

26    Facebook page titled "Team Kolfage Against Bullying" (TKAB). Defendants have

1   admitted to controlling the TKAB page. Through this page, numerous harassing

2   and/or defaming posts aimed at Loebe were made, in an attempt to instigate

3   disciplinary action by the USMC against him.

4   **53.**   As part of the campaign to harass, intimidate and place Loebe in a false light, while

5   aiding and assisting Kolfage Jr. in rehabilitating his online image, Elia has composed

6   and filed a nuisance Civil Complaint CV2014-003746 ("AZ Complaint") with the

7   Maricopa County District of the Arizona Superior Court naming Loebe as one of

8   seven defendants. The case was removed to the United States District Court District

9   of Arizona and assigned case number 2:14-cv-01638.  The AZ Complaint was

10   dismissed with prejudice for Loebe, against Kolfage Jr and A. Kolfage.

11   **54.**   Under information and belief, Kolfage Sr. also harassed and defamed Loebe, in

12   further attempts to silence Loebe, through various incendiary posts to the currently

13   defunct TKAB attack page. Kolfage Jr. has admitted to controlling the TKAB attack

14   page.

15   **55.**   Numerous fake profiles and harassing pages have been created and subsequently

16   removed by Facebook, as they have been discovered, for violating Facebook's

17   standards of proper conduct. These accounts have been used to post the same

18   harassing material which had been misused by Kolfage Sr., Kolfage Jr. and Kuhnen

19   Remington and Prager are two of seven named defendants in the AZ Complaint.

20   Remington is als a plaintiff along with Gann in a Federal Lawsuit in TN. Said

21   lawsuit names the same five defendants as in this complaint.

22   **56.**   One noteworthy harassing page to be removed for violating Facebook standards of

23   conduct was a page named "Big Juan". The page was removed in April, 2014. The

24   "cover photo" for the page featured only eight individuals to include all seven named

25   defendants in the AZ Complaint plus Remington's domestic partner, Susanne Gann.

26   "Big Juan" was also the name of a Mexican restaurant chain with two locations in

1    Tucson, AZ, where defendants Kolfage Jr and A Kolfage resided at the time. The

2    chain was opened in March, 2012, and announced its closure in January, 2013.

3    Shortly before being removed, the page was renamed "Big Juan Prager" and more

4    pictures were posted of John Prager's family, as culled from Facebook, Myspace,

5    and other Internet sources. This clear violation of Prager's copyright was another

6    thinly veiled attempt of harassment, intimidation and coercion. Prager was one of the

7    seven named defendants in the AZ Complaint

8  **57.**   Under information and belief, Loebe is not the only victim of defendants'

9    harassment. Other victims include (but are not limited to) Jan Vrotsos, Jackie

10    Millinor, Bryan Andrew Klaves, Kristi Shields, and Mike A Duncan.

11  **58.**   Under information and belief, regarding Jan Vrotsos, Kolfage Sr. and Kolfage Jr.

12    posted fabricated screen captures, claiming them to be legitimate screen captures of

13    statements by Ms. Vrotsos. Kolfage Sr. and Kolfage Jr. claimed that the screen shot

14    had been confirmed to be legitimate by various law enforcement agencies. It was

15    later revealed that the screen shots had never even been examined by law

16    enforcement agencies on behalf of any of the defendants. As a result of the

17    defendant's posting Ms. Vrotsos' home address and phone number to Kolfage Jr.'s

18    autonomous Facebook page, Ms. Vrotsos and her elderly mother received hundreds

19    of phone calls and email messages threatening both of them (and their dog) with

20    death. Kuhnen has joined in the campaign of harassment of Ms. Vrotsos by authoring

21    a post to his right-wing blog which is nothing more than a rehash of the debunked

22    allegations against Ms. Vrotsos (see http://www.citizens-

23    news.com/2014/08/20/7926/ ).

24  **59.**   It should be noted that Ms. Vrotsos has file Motion to Intervene in a similar lawsuit

25    as this complaint against these same defendants in TN. The case is being tried in the

26    United States District Court Middle District of TN (see *Gann et al. v. Kolfage et al,*

1    3:14-cv-01609).

2    **60.**   Under information and belief, regarding Bryan Andrew Klaves, defendants claimed

3    that Mr. Klaves had "attacked" Kolfage Jr. online, and proceeded to foment a

4    vigilante mindset to get Mr. Klaves fired from his job with the VA.

5    **61.**   Under information and belief, regarding Kristi Shields, Kolfage Sr. and Kolfage Jr.

6    presented fabricated screen captures, claiming them to be legitimate screen captures

7    of statements by Ms. Shields, and fomenting a vigilante mindset among his many

8    thousands of internet followers to create a situation similar to what happened with

9    Ms. Vrotsos and Mr. Klaves. Defendants urged Kolfage Jr.'s followers to "Make he

10    famous" which was obviously a thinly veiled threat of harassment and intimidation.

11    **62.**   Under information and belief, regarding Mike A Duncan, while making a public cal

12    to victimize Mr. Duncan in similar manner as Ms. Vrotsos, Mr. Klaves and Ms.

13    Shields, Kolfage Sr. and Kolfage Jr. proudly claimed that they believe in "street

14    justice". Defendants posted Mr. Duncan's home phone and address to defendant's

15    autonomous Facebook page in a clear attempt to encourage his thousands of interne

16    followers to harass Mr. Duncan. It should be noted that Mr. Duncan is a 20-year

17    veteran of the USAF, retiring with the rank of Technical Sergeant, a rank superior t

18    that of Kolfage Jr. and had no previous interaction with defendants. The critical

19    Facebook posts that defendants took offense to were made by Tami Duncan, Mr.

20    Duncan's spouse, using her own autonomous Facebook profile.

21    **63.**   Under information and belief, Kolfage Sr. and Kolfage Jr. have confirmed their

22    involvement in such domestic terrorism as described in paragraphs 51 to 56.

23    Defendants have stated, "... they said mean stuff, so I exposed them and all their

24    info." By these actions, defendants have demonstrated that they have no

25    compunction about recklessly disregarding the law to seek revenge for perceived

26    wrongs, no matter how slight. People who are not mentally disturbed would go to th

1 police, or report such offensive material to the site administrators where the content

2 is found, actions that defendants failed to take because the critical posts that the

3 defendants have taken offense to are neither criminal nor inappropriate.

4 **64.** Under information and belief, defendants' online behavior, through autonomous

5 Facebook and Twitter pages, and other Facebook pages demonstrate a pattern of

6 serial harassment and intimidation.

7 **65.** Under information and belief, Kolfage Sr. and Kolfage Jr. have frequently posted

8 public statements of a political nature that clearly identify them as aligned with the

9 extreme right wing of the political spectrum in the United States. Elia has also poste

10 information publicly that indicates he is aligned with and of the same extreme

11 political beliefs as Kolfage Sr., Kolfage Jr. and Kuhnen.

12 **66.** Elia composed and filed the AZ Complaint as part of the campaign to harass and

13 intimidate Loebe, while aiding and assisting Kolfage Jr. in rehabilitating his online

14 image. Elia has clearly lied to the media about the nature of the lawsuit as he stated

15 in an interview with the media on June 06, 2014, that his intent was to get the

16 "harassment" and "lies" about Kolfage Jr. and A. Kolfage to stop. Elia did not send

17 any "cease and desist" letters to the named defendants in the AZ Complaint, as

18 would be customary if his intent truly were to simply stop what they have portrayed

19 as harassment.

20 **67.** Under information and belief, Kolfage Jr.'s family and followers have been

21 encouraging Kolfage Jr. to pursue a political career, even the Office of the Presiden

22 of the United States. The negative, yet accurate, information which Kolfage Jr.

23 wishes to have removed from the internet by means of the AZ Complaint would

24 preclude the furtherance of such political aspirations.

25 **68.** By and through the baseless AZ complaint, Elia furthered the campaign of

26 harassment and intimidation of Loebe. As a licensed attorney in the state of Arizona

1    Elia knew, or should have known, that a "False Light" tort applies to private non-

2    public individuals, such as Loebe, and not public figures such as the defendants. Th

3    lifestyle and daily activities of the defendants, as described by the defendants in the

4    AZ complaint and in published interviews, are clearly that of public figures.

5  **69.**   That Elia facilitated the persistent campaign of harassment, intimidation and

6    defamation by and through filing the AZ Complaint is unacceptable for any

7    officer of the court. It is especially troubling that Elia has utterly failed to do

8    his due diligence before presenting the AZ Complaint to the Court in

9    Arizona. That he intended to try that case in the media instead of in court is

10   evidenced by the dozens of Internet articles referencing that case (posted

11   even before all defendants had been served) such as found at

12   a.) http://www.roselawgroup.com/rlgers/rose-law-group-litigation-

13   cyber-law-attorney-logan-elia-tells-fox-10-suit-facebook-bullies-

14   video.html ,

15   b.) http://www.roselawgroup.com/rlgers/disabled-vet-ua-student-sues-

16   facebook-posters-smear-campaign-represented-rose-law-group-cyber-law-

17   attorney-logan-elia.html ,

18   c.) http://tucson.com/news/local/veteran-s-social-media-suit-seeks-to-define-

19   libel/article_cff9648a-7e1d-5580-81b2-8b09cc1a6f95.html ,

20   d.) http://www.military.com/daily-news/2014/07/08/air-force-vet-in-social-

21   media-lawsuit.html?comp=1199436026997&rank=1 ,

22   e.) The media coverage has reached as far east as Boston:

23   http://www.myfoxboston.com/story/25971722/2014/07/08/valley-military-

24   vet-files-lawsuit-against-online-bullies

25  **70.**   Defendants also attempted to try the AZ Complaint in the media from Kolfage Jr.'s

26   newly re-launched political website

1    http://www.woundedamericanwarrior.com/triple-amputee-war-veteran-brian-

2    kolfage-law-suit-filed/ . Such activities by defendants would make any fair hearing

3    for the named defendants in the AZ Complaint impossible as defendants named in

4    this Complaint had severely poisoned any potential jury pool.

5    **71.**   To be clear, the local media in Arizona was provided with an electronic copy of the

6    AZ Complaint (sans any complaint number) before the first defendant named in the

7    AZ complaint had been served, even before the AZ Complaint had been filed with

8    the AZ Court.

9    **72.**   There may be others involved that Loebe is currently unaware of and who will be

10   named as further information is made available through the discovery process for

11   this action.

12   **73.**   Loebe's involvement with defendants began in early February, 2014, when he was

13   alerted to Kolfage Jr's online activities by a co-worker who had done the research

14   about the Kolfage Jr and what he had done to Jan Vrotsos. That co-worker

15   researched the Kolfage Jr's apparently illegal activities throughout January and

16   February. Loebe used the research she provided (with her permission) and made

17   some final edits after he reviewed it. Loebe then published the final article on Marc

18   5, 2014, under his name.

19   **74.**   The co-worker wanted no credit for the published article because, as a woman, she

20   afraid that plaintiffs will dox her as they did Ms. Vrotsos. Therefore, Loebe used he

21   as a source.

22   **75.**   Contrary to the allegations by the defendants, Loebe did not create a fake account

23   impersonating Kolfage, but simply used Kolfage's material to TEMPORARILY cra

24   a duplicate of Kolfage's page for the fair use purpose of illustration, which is made

25   clear in the context of the article. There was clearly no intent to deceive as implied

26   by defendants.

76. As noted in paragraph 47, the AZ Complaint was dismissed with prejudice for Loebe. Part of the Order dismissing the complaint against Loebe is the obligation upon Kolfage Jr and A. Kolfage to remove any disparaging material posted publicly by them. Also they are to refrain from engaging third parties to publicly disparage Loebe. Additionally, they are to refrain from publicly disparaging Loebe. Not even days after the subject order was issued, Kolfage Jr did in fact issue several disparaging and defamatory statements about Loebe.

77. Kolfage Jr also contacted Loebe's wife, using A Kolfage's Facebook account, to harass and attempt intimidation of Loebe through that contact with Loebe's wife.

78. Kolfage Jr also conspired with Kuhnen to produce disparaging and defamatory material under the guise of "journalism" (see http://www.redsqre.com/?cat=3).

79. Kolfage Jr also conspired with Kuhnen to publish illegal recordings of defendents in the Arizona case during the settlement conference on Kuhnen's blog that violate Arizona's wiretapping laws in addition to further disparaging and defaming other defendents in the case. (see http://www.redsqre.com/?p=179)

80. Kolfage Jr contacted Loebe's wife in an effort to harass and intimidate her, threatening sanctions against the Loebe family and money in damages as a means o retribution. Mrs Loebe was not and has never been party to any case involving Loeb and/or Kolfage.

### FIRST CAUSE OF ACTION

### (Civil Conspiracy)

81. Plaintiff incorporates the previous allegations as though set forth entirely herein.

82. A "civil conspiracy" is defined as a "combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means, Participating in a civil conspiracy is not an independe

1 tort. It is a derivative claim that requires the existence of an underlying tort or

2 wrongful act committed by one or more of the conspirators in furtherance of the

3 conspiracy." *Birmingham-Jefferson County Transit Auth. v. Boatright*, 2009 U.S.

4 Dist. LEXIS 74021, 13-14 (M.D. Tenn. Aug. 20, 2009).

5 **83.** Each conspirator is jointly and severally liable for each act done by the other

6 conspirators. *Klistoff v. Superior Court*, 157 Cal. App. 4th 469 (Cal. App. 2d Dist.

7 2007).

8 **84.** It is not necessary to prove individual conspirators were involved in all aspects of the

9 conspiracy or that they knew all of the details involved.

10 **85.** Defendants' behavior and actions as set forth above demonstrate a concerted effort

11 harass, defame and otherwise intimidate Loebe into remaining silent regarding the

12 objectionable activities and public statements of Kolfage Jr. On its face, this is a

13 conspiracy *per se*.

14       **SECOND CAUSE OF ACTION**

15         **(False Light)**

16 **86.** Plaintiff incorporates the previous allegations as though set forth entirely herein.

17 **87.** Defendants' behavior as set forth above has given publicity to matters concerning

18 Plaintiff in such a way as to place Plaintiff before the public in a false light.

19 **88.** The false light, including but not limited to portraying Plaintiff as a criminal, liar,

20 and cheat, is highly offensive to Plaintiff and other reasonable people.

21 **89.** Defendants' statements constitute a major misrepresentation of Plaintiff's character,

22 history, activities and beliefs.

23 **90.** Defendants had knowledge of or acted in reckless disregard as to the falsity of the

24 publicized matter and the false light in which they placed Plaintiff.

25 **91.** The Plaintiff was placed in the false light in furtherance of the objective of the

26 conspiracy as outlined in the First Cause of Action.

**THIRD CAUSE OF ACTION**

**(Defamation)**

92. Plaintiff incorporates the previous allegations as though set forth entirely herein.

93. The Defendants have made statements regarding Loebe as set forth above.

94. Defendants published these statements to third parties by posting them online.

95. Defendants' statements are false.

96. Defendants' statements are defamatory.

97. When Defendants posted their statements on the internet, they acted with actu[al] malice and knew that the statements were false and defamatory.

98. In the alternative, when Defendants posted their comments on the internet, they act[ed] with a reckless disregard for whether the statements were false and defamatory.

99. Defendants posted their comments on the internet in a purposeful attempt to dama[ge] Plaintiff's good name, reputation, and prospects for present and future employment.

100. Defendants' statements have harmed, and are continuing to harm, Plaintiff's go[od] name, reputation, and prospects for present and future employment.

101. Defendants' statements deter third persons from associating or dealing with Plainti[ff]

102. Defendants' statements have brought Plaintiff into contempt or ridicule.

103. Defendants' statements have impeached Plaintiff's honesty, integrity, virtue, a[nd] reputation.

104. Some of Defendants' statements allege criminal activity and are defamatory *per se*.

105. Plaintiff will continue to be harmed by Defendants' comments until they are d[e] indexed from major internet search engines.

106. Plaintiff was defamed by Defendants in furtherance of the objective of t[he] conspiracy as outlined in the First Cause of Action.

**FOURTH CAUSE OF ACTION**

**(Tortious Interference of a Business Relationship)**

**107.** Plaintiff incorporates the previous allegations as though set forth entirely herein.

**108.** Plaintiff has a valid ongoing business relationship with "Patheos.com" - an Internet media group committed to furthering the conversation on faith and tolerance.

**109.** Defendants know about that business relationship.

**110.** Defendants intentionally attempted to induce Patheos to remove articles written by Loebe for which Patheos pays Loebe on a "Pay per view" (PPV) basis.

**111.** Loebe has suffered good standing with Patheos which could result in future economic damage as a result of the interference with that relationship.

**112.** Defendants embarked in the tortious interference in furtherance of the objective of the conspiracy as outlined in the First Cause of Action.

### FIFTH CAUSE OF ACTION

#### (Harassment)

**113.** Plaintiff incorporates the previous allegations as though set forth entirely herein.

**114.** Defendants, with the malicious intent to frighten, intimidate or cause emotional distress, did communicate with third parties by telephone, in writing or by electroni communication, including, but not limited to, text messaging, facsimile transmissions, electronic mail or Internet services, without legitimate purpose.

**115.** As the result of the communications referred to in paragraph 118, Loebe was frightened, intimidated and emotionally distressed.

**116.** The Defendants' actions and statements regarding Loebe as set forth above are forn of harassment.

**117.** Defendants harassed Loebe in furtherance of the objective of the conspiracy as outlined in the First Cause of Action.

### SIXTH CAUSE OF ACTION

#### (Intentional Infliction of Emotional Distress)

**118.** Plaintiff incorporates the previous allegations as though set forth entirely herein.

1  **119.**  The conduct of the defendants is extreme and outrageous.

2  **120.**  Defendants intended their actions to cause emotional distress.

3  **121.**  In the alternative, Defendants recklessly disregarded the near certainty that Plaintiff

4  would suffer emotional distress resulting from their conduct.

5  **122.**  Plaintiff has, in fact, suffered extreme emotional distress as a result of Defendants'

6  conduct.

7  **SEVENTH CAUSE OF ACTION**

8  **(Breach of Contract)**

9  **123.**  Plaintiff incorporates the previous allegations as though set forth entirely herein.

10  **124.**  Loebe and Kolfage Jr and A Kolfage entered into a agreement.

11  **125.**  Loebe did all, or substantially all, of the significant things that the agreement

12  required him to do.

13  **126.**  All conditions required by the contract for Kolfage Jr's performance had occurred.

14  **127.**  Kolfage Jr did violate the terms of that agreement by the defamatory and disparaging

15  statements posted publicly by Kolfage Jr and Kuhnen.

16  **128.**  Kolfage Jr did violate the terms of that agreement by refusing to submit a signed

17  apology letter to Ms. Vrotsos for the defamatory action he took against her on

18  December 27, 2013.

19  **EIGHTH CAUSE OF ACTION**

20  **(Malicious Prosecution)**

21  **129.**  Plaintiff incorporates the previous allegations as though set forth entirely herein.

22  **130.**  The defendants filed suit without probable cause.

23  **131.**  The defendant brought the action with malice.

24  **132.**  The prior action was finally terminated in the plaintiff's favor.

25  **NINTH CAUSE OF ACTION**

26  **(Abuse of Process)**

1  **133.**  Plaintiff incorporates the previous allegations as though set forth entirely herein.

2  **134.**  The Defendants' actions and statements regarding Loebe as set forth above include

3  the abuse of process, *vis-à-vis* the AZ Complaint.

4  **135.**  Defendants knowingly and with malicious intent initiated the baseless AZ Complaint

5  in an improper venue where Loebe does not have "minimum contacts".

6  **136.**  Defendants, with malicious intent, publicly misrepresented the objective of the AZ

7  Complaint against Loebe.

8  **137.**  Defendants' Abuse of Process was executed in furtherance of the objective of the

9  conspiracy as outlined in the First Cause of Action.

10

11  **Prayer For Relief**

12  WHEREFORE, having fully set forth its complaint, plaintiff pray for relief from this

13  Court as follows:

14  *1.*  For relief under the First Cause of Action for civil conspiracy and damages arising

15  thereof, together with additional damages through and after the time of trial; in the

16  event that this matter is decided on default, plaintiff alleges that $50,000 is an

17  appropriate amount of damages;

18  *2.*  For relief under the Second Cause of Action for false light and damages arising

19  thereof, together with additional damages through and after the time of trial; in the

20  event that this matter is decided on default, plaintiff alleges that $50,000 is an

21  appropriate amount of damages;

22  *3.*  For relief under the Third Cause of Action for defamation and damages arising

23  thereof, together with additional damages through and after the time of trial; in the

24  event that this matter is decided on default, plaintiff alleges that $50,000 is an

25  appropriate amount of damages; plaintiff also requests a court order or judgment

26  explicitly stating that defendants' statements are false and defamatory;

1  *4.*     For relief under the Fourth Cause of Action for tortious interference and damages

2          arising thereof, together with additional damages through and after the time of trial;

3          in the event that this matter is decided on default, plaintiff alleges that $50,000 is an

4          appropriate amount of damages;

5  *5.*     For relief under the Fifth Cause of Action for harassment and damages arising

6          thereof, together with additional damages through and after the time of trial; in the

7          event that this matter is decided on default, plaintiff alleges that $50,000 is an

8          appropriate amount of damages;

9  *6.*     For relief under the Sixth Cause of Action for intentional infliction of emotional

10         distress and damages arising thereof, together with additional damages through and

11         after the time of trial; in the event that this matter is decided on default, plaintiff

12         alleges that $50,000 is an appropriate amount of damages;

13  *7.*    For relief under the Seventh Cause of Action for breach of contract and damages

14         arising thereof, together with additional damages through and after the time of trial;

15         in the event that this matter is decided on default, plaintiff alleges that $50,000 is an

16         appropriate amount of damages;

17  *8.*    For relief under the Eighth Cause of Action for malicious prosecution and damages

18         arising thereof, together with additional damages through and after the time of trial;

19         in the event that this matter is decided on default, plaintiff alleges that $50,000 is an

20         appropriate amount of damages;

21  *9.*    For relief under the Ninth Cause of Action for abuse of process and damages arising

22         thereof, together with additional damages through and after the time of trial; in the

23         event that this matter is decided on default, plaintiff alleges that $50,000 is an

24         appropriate amount of damages;

1  10.  For punitive damages under common law for defendants' malicious and willful

2  conduct in an amount to be proven at trial; in the event that this matter is decided on

3  default, plaintiff alleges that $150,000 is an appropriate amount of punitive damage

4  11.  For plaintiff's taxable costs as provided by statute;

5  12.  For interest upon plaintiff's taxable costs at the maximum legal rate from the date

6  judgment is entered herein until the date such judgment is paid in full;

7  13.  For plaintiff's attorneys' fees as provided by statute and by contract in an amount to

8  be proven at trial;

9  14.  For all other relief as this Court deems just and proper.

10

11         RESPECTFULLY SUBMITTED this 9th day of June, 2014.

12

13

14         /s/Paul Loebe

15         Paul Loebe

16         Plaintiff